477 P.2d 252

**STATE of Arizona, Appellee,**

v.

**Rodney Jay JENSEN, Appellant.**

**No. 1998.**

Supreme Court of Arizona,
In Banc.

Nov. 27, 1970.

**422**

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

LOCKWOOD, Chief Justice:

Appellant Jensen (defendant) was convicted below of second degree burglary (A.R.S. §§ 13–301, 13–302) and sentenced to a term of not less than seven nor more than ten years. He appeals on the grounds that (1) the evidence is insufficient to support a jury verdict of guilty; (2) the trial court improperly instructed on the probative value to be accorded circumstantial evidence; and (3) the in-court identification of the defendant was improper.

Taking the facts most favorable to upholding the conviction, State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965), they are as follows:

The complaining witness, Mrs. Dorothy Clatterbuck, at about noon on August 16, 1968, returned to her Phoenix home after an absence of approximately two hours for a pair of gloves. She saw a light car, parked in an unusual position near her house, and took the license number. She entered the house and immediately sensed that someone had been there. Papers were disarranged and a door was out of place. The laundry room door was broken, and glass was scattered on the laundry room floor. The bedroom was "messed-up", drawers were open, jewelry was scattered over the floor and dresser. The frame of the screen on the bedroom window was bent. Mrs. Clatterbuck testified that she could only find one missing item, her wedding ring and perhaps some small change.

She told her companion to call the police and as Mrs. Clatterbuck stood by the laundry room door she saw the defendant run across her backyard. She remained still and "memorized his face." She continued to observe him until he had crossed the yard. The only entrances to the yard, which was surrounded by a high fence, were through the house, and through a small gate next to the driveway. A few minutes later she saw the suspicious car drive away, although she could not say with certainty that the defendant was driving the car.

The defendant was traced through the license number of the car and arrested a few days later. At trial, the registration of the car was introduced, and an employee of the Division of Motor Vehicles testified that on the day in question the car and license number were registered in the name of the defendant.

The defendant did not take the stand in his own behalf.

■ The defendant's first assignment of error is that there was insufficient evidence to support a guilty verdict. We do not agree. The evidence shows that Mrs. Clatterbuck's home was broken into, and that at least one item was missing. Mrs. Clatterbuck identified the defendant as the person who ran through her yard, which was fenced, and could only be entered through the house or through a gate next to the driveway. The defendant was traced through ownership of the suspicious automobile. This evidence, admittedly largely circumstantial, is sufficient to support the verdict. State v. Riley, 106 Ariz. 318, 475 P.2d 932 (October 28, 1970).

■ We will not overturn a verdict unless there is a lack of substantial evidence to support it. There were no conflicts in the evidence. That evidence may be circumstantial does not make it insubstantial. State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (November 16, 1970).

■ Defendant's second contention is that the trial court improperly instructed the jury on the probative value of circumstantial evidence. The trial court instructed the jury:

"A fact may be proved by either direct or circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eye witness; circumstantial evidence is proof of a set of facts and circumstances indicating the guilt or innocence of a defendant. *The law makes no distinction between the weight to be given to either direct or circumstantial evidence*; it requires only that after weighing all the evidence, you be convinced of the guilt of the defendant beyond a reasonable doubt before he can be convicted." (Emphasis added.)

Defendant complains that the emphasized words in the above instruction were prejudicial error, citing State v. Reynolds, 104 Ariz. 149, 449 P.2d 614 (1969). However, we approved the above instruction in State v. Harvill, supra, overruling State v. Reynolds, stating: "It is the opinion of this court that the probative value of direct and circumstantial evidence are intrinsically similar." The court so instructed the jury, making it clear that the state had to prove the defendant guilty beyond a reasonable doubt. There was no error.

The defendant's third contention is that the trial court erred in allowing Mrs. Clatterbuck to identify the defendant at trial because her in-court identification was tainted by an illegal lineup identification.

The defendant was taken into custody three days after Mrs. Clatterbuck's house was broken into. As he was taken to the police station, the arresting officer radioed in that the defendant was in custody and a lineup was arranged. This lineup took place one hour after the defendant was arrested. He requested that the Public Defender be present in his behalf. Although the Public Defender was called by telephone, he declined to come, because there was some question of the defendant's indigency. The lineup proceeded without an attorney being present. (It will be noted that defendant was represented by an attorney at the preliminary hearing, who withdrew before arraignment in the trial court. At arraignment in the trial court, the judge appointed the Public Defender to represent defendant. Thereafter that officer on motion secured a hearing to determine whether the defendant was able to employ counsel, and the court, determining that he was, discharged the Public Defender and directed defendant to employ counsel. However, shortly thereafter this finding was reversed, and the Public Defender was again appointed.)

Defendant's counsel (Public Defender) moved to suppress any in-court identification of defendant by the complaining witness, Clatterbuck, on the ground that such identification would be based upon her line-up identification. A hearing was held in chambers just prior to trial on the motion to suppress. Both upon direct and cross-examination Clatterbuck testified positively that her identification of defendant was not based on a lineup identification, which she did make, but was based on the fact that she had observed defendant as he crossed her yard, and had "memorized" his face, so that she could recognize him. She testified as follows:

"Q. Mrs. Clatterbuck, if you had never attended that lineup, would you be able to tell us who the person was at your home?

"A. Yes."

\* \* \* \* \* \*

"Q. You would be able to identify him?

"A. Yes, absolutely.

"Q. Would you explain to the court very briefly why you'd think you'd be able to regardless of the lineup?

"A. As I was standing in my laundry room, which is very very small, and looking through the broken window, I heard this person coming, and I stood, and I have a very very narrow backyard, there's a cliff behind it, and cliff all around me. It's a mountain home. And I heard him coming, and I stood there very quietly and watched him move across the backyard and watched him all the way. I just looked at his face and I guess just memorized it. I know of no other way to explain it other than I just looked at him so I would recognize him if it was necessary."

\* \* \* \* \* \*

"Q. Whatever happened, you studied his face most of the time you were there [at the lineup] to make sure you were right?

"A. I studied all of them, but I studied the face at the time he ran across my yard."

■ The trial court properly excluded any testimony of the identification of the defendant at the lineup. He then determined that Mrs. Clatterbuck's identification of the defendant was not tainted by the illegal lineup.

"THE COURT: Getting back to the basis of the evidence before the court, the court finds that the complaining witness, Dorothy Clatterbuck, can make an identification of the defendant based on observation other than at the said lineup. Therefore, it is ordered that the complaining witness, Dorothy Clatterbuck, may testify regarding said identification."

■ While the lineup identification did not comply with United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) there was sufficiently clear and convincing evidence adduced at the pre-trial hearing to sustain the court's finding. We do not approve or condone such lineup procedure. But under the circumstances in this case, we are convinced that this is not cause for reversal.

Affirmed.

STRUCKMEYER, V. C. J., and UDALL, McFARLAND and HAYS, JJ., concur.