916 P.2d 1064

STATE of Arizona, Appellee,

v.

Ruben Renteria ORENDAIN, Appellant.

No. 1 CA–CR 93–0705.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 8, 1996.

Review Granted May 21, 1996.

1. Defendant has not challenged this finding on appeal.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Diane M. Ramsey, Assistant Attorney General, Phoenix, for Appellee.

M. Ruth O'Neill, Garden City, Kansas, for Appellant.

Ron Wood's Law Office by Ronald D. Wood, Show Low, for Appellant.

## OPINION

GRANT, Judge.

Ruben Renteria Orendain ("Defendant") appeals from his convictions and sentences imposed on one count each of transportation, possession and conspiracy to commit possession of marijuana, all class 2 felonies. The central issue raised by Defendant is the trial court's denial of his motion to suppress. For the following reasons, we reverse and remand the case to the trial court.

## FACTS AND PROCEDURAL HISTORY

Department of Public Safety ("DPS") Officer Rush ("Rush") stopped a vehicle on I–40 because it was following another vehicle too closely. He noticed expired registration tags and that the men in the car were not wearing seat belts. He asked Defendant, the driver, for registration and a license. Defendant did not have identification. He told Rush that the vehicle belonged to the passenger, Teodocio Caro ("Caro"). Caro produced a vehicle title and driver's license.

Rush told the men he would issue citations for following another vehicle too closely, expired vehicle registration and Defendant's driving without a driver's license. Rush asked the men whether contraband was in the car, and he asked for permission to search. Defendant indicated that the car did not belong to him and deferred to Caro by saying, "Ask the other guy." Rush presented Caro with a DPS consent to search form written in English and Spanish. Rush did not explain what the form said. Caro signed the Spanish side of the form.

Rush then looked beneath the driver's seat. He observed a package sticking out from the seat 2–3 inches and smelled marijuana coming from it. He searched the entire vehicle and found twenty-one pounds of marijuana behind the back seat, under the dashboard, and in the bumper. He also found carrying bags in the back seat and in the trunk. Each contained personal items. One bag had two identification cards with Defendant's name and photo.

After Caro and Defendant were indicted, each separately filed motions to suppress. The trial court dismissed Caro's case because the consent form inadequately explained the term "search" in Spanish. The court noted that the only issue in Defendant's case was his expectation of privacy in the vehicle.

A different judge denied Defendant's motion to suppress. The court found: (1) the stop was valid; (2) Defendant consented to the search; and (3) Defendant failed to raise his right to privacy in the suitcase found in the car. A jury returned a guilty verdict and the court sentenced Defendant to six years' imprisonment. He timely appeals.

## ISSUES ON APPEAL

Defendant asks us to review whether the trial court abused its discretion by:

I.  denying the motion to suppress;

II.  allowing the jury to submit questions to the witnesses, and in reopening the case to ask witnesses questions presented by the jurors;

III.  denying a continuance;

IV.  denying the motion for acquittal; and

V.  erring in its jury instructions.

### Motion to Suppress

Defendant asserts that the trial court should have granted his motion to suppress the marijuana discovered during the search of Caro's vehicle. On review, we consider the facts in the light most favorable to upholding the trial court's ruling on a motion to suppress. *State v. Swanson,* 172 Ariz. 579, 582, 838 P.2d 1340, 1343 (App.1992), *cert. denied,* 507 U.S. 1006, 113 S.Ct. 1649, 123 L.Ed.2d 270 (1993).

A.  *Effect of Prior Ruling in Co–Defendant's Case*

■ Defendant characterizes Caro's successful suppression motion as the "law of the case." He claims the trial court was bound by the ruling in Caro's severed case that consent was invalid.

The law of the case doctrine is only applicable when an appellate court, not a trial court, has ruled on a prior appeal of the same case. *State v. Reynolds,* 123 Ariz. 117, 118 n. 1, 597 P.2d 1020, 1021 n. 1 (App.1979). Because Defendant's suppression motion ruling does not involve an appellate decision, the law of the case doctrine does not apply.

■ Defendant alternatively asserts that collateral estoppel (issue preclusion) precludes re-litigation of the consent issue. Collateral estoppel normally applies to future litigation between the same parties. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). The elements of collateral estoppel are: (1) the issue sought to be re-litigated must be the same issue that was the subject of the previous litigation; (2) a final decision was made; and (3) mutuality of parties. *State v. Jimenez,* 130 Ariz. 138, 140, 634 P.2d 950, 952 (1981). There is a question in the present case as to whether collateral estoppel is applicable because the parties to the two actions differ. Defendant conceded this lack of mutuality at trial.

The previous court found that Caro did not consent to the search of the automobile. Caro's lack of consent is not dispositive of Defendant's consent, thus collateral estoppel will not suppress the evidence of the search as to Defendant.

■ A long line of jurisprudence also prevents Defendant from asserting Caro's Fourth Amendment rights as his own. *See Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978); *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 1569–70, 36 L.Ed.2d 208 (1973); *Alderman v. United States,* 394 U.S. 165, 173–174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."); *Simmons v. United States,* 390 U.S. 377, 389, 88 S.Ct. 967, 973–74, 19 L.Ed.2d 1247 (1968); *Wong Sun v. United States,* 371 U.S. 471, 492, 83 S.Ct. 407, 419–20, 9 L.Ed.2d 441 (1963).

■ Nevertheless, we still must consider whether Defendant's Fourth Amendment rights were violated. Arizona law is clear that a non-owner/driver has standing to raise the Fourth Amendment issue. *State v. Acosta,* 166 Ariz. 254, 256, 801 P.2d 489, 491 (App.1990). However, this and other similar Arizona cases are cases in which the driver was a permissive user alone in the car. We have found no Arizona case in which the owner was an accompanying passenger. We therefore look to federal case law on this issue. *United States v. Jefferson,* 925 F.2d 1242 (10th Cir.1991). In *Jefferson,* the Tenth Circuit expressly distinguishes cases in which the permissive driver is alone in the car from those in which the owner was present. The *Jefferson* court neither concerned itself with the asserted non-validity of the driver's consent nor with the fact that the consent of the owner was not sought or obtained. The court stated:

> [W]e must determine whether at the time of the search, [defendant] enjoyed "a property [ ] or possessory interest in the automobile, [ ] or an interest in the property seized." ... Because we hold that [defendant] enjoyed neither, we reject his Fourth Amendment claim. Even though [the owner] was not driving the car, he alone retained a possessory interest in the car. Because he was present in the car, he was constantly in a position to assert his possessory interest to the extent that he desired to do so; therefore, he alone enjoyed the protection of the Fourth Amendment.

925 F.2d at 1249.

In *United States v. Torres,* 32 F.3d 225, 229 (7th Cir.1994), the Seventh Circuit reasoned similarly, stating "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." The *Torres* case acknowledges that a driver might establish standing by introducing evidence that he had a reasonable expectation of privacy "in the area searched or the object seized." *Id.* at 230. For instance, one might establish standing with respect to a suitcase in the trunk by asserting ownership of the suitcase. Otherwise, in this case, Defendant has no standing to raise a Fourth Amendment objection to a search of the automobile, and the giving or withholding of the owner's consent is irrelevant.

Therefore, because Defendant had neither a possessory nor a property interest in the vehicle, we reject his Fourth Amendment claim and affirm the trial court's denial of Defendant's motion to suppress.

### B. *Legality of the Stop*

■ Defendant asserts that Rush lacked a valid reason to stop his vehicle and thus his detention was illegal.

■ The state has a legitimate interest in maintaining safe roadways for all motorists. *State v. Boudette*, 164 Ariz. 180, 185, 791 P.2d 1063, 1068 (App.1990), *cert. denied*, 498 U.S. 903, 111 S.Ct. 267, 112 L.Ed.2d 223 (1990). This interest outweighs the minimal intrusion of a traffic stop and authorizes police to stop motorists for highway violations. A traffic violation provides sufficient grounds to stop a vehicle. *State v. Acosta*, 166 Ariz. 254, 257, 801 P.2d 489, 492 (App.1990). Rush's stop was valid because Defendant's conduct in following another vehicle too closely violated traffic laws. *See* A.R.S. § 28–730(A).

### Jury Instructions

■ Defendant also asserts that the trial court erred because jury instructions defining "possession" and "constructive possession" relieved the state of its burden of proving all elements of the crime beyond a reasonable doubt. He contends the instruction constitutes fundamental error.

At the settling of instructions, defense counsel objected to the proposed instruction on constructive possession because it did not include the state's requirement to show dominion and control over the drugs. The court modified the instruction as defense counsel requested. The court then asked counsel if they had any objections to the forms of the verdict. Neither counsel had any further objections.

The court first stated:

The State has charged the defendant with the crime of transportation of marijuana for sale, possession of marijuana for sale, and conspiracy to commit possession of marijuana for sale, transportation of marijuana, and sale of marijuana. This charge is not evidence against the defendant. You must not think the defendant is guilty just because of this charge. The defendant [has] pled not guilty. This plea of not guilty means that the State must prove every part of the charge *beyond a reasonable doubt.*

(Emphasis added.)

The court ultimately gave the following instruction on possession and constructive possession:

Possession requires either actual physical possession or constructive possession. Actual physical possession means that the marijuana was in the personal custody of the defendant.

Constructive possession means that the marijuana was found in a place under the defendant's dominion and control. More than one person can possess marijuana at any given time.

Both direct and circumstantial evidence may be used to show possession of marijuana. The evidence must link the defendant to the marijuana in a manner and to an extent *that a reasonable inference arises* that the defendant knew of the existence and whereabouts of the marijuana and that he had dominion and control over the marijuana.

The mere presence of the defendant at the scene where the marijuana is found is not sufficient by itself to show that the defendant possessed the marijuana. There must be specific facts from which it may reasonably be inferred that the defendant knew of the marijuana's existence and whereabouts.

(Emphasis added).

The court also gave Recommended Arizona Jury Instruction Standard No. 4 on direct and circumstantial evidence, which states in part: "circumstantial evidence is the proof of a fact from which the existence of another fact may be inferred."

Defendant asserts that the possession instruction reduces the state's burden of proof because it instructed the jury that the state needed to establish a "reasonable inference" of possession rather than prove it "beyond a reasonable doubt." We agree.

If the state had not submitted evidence that permitted "a reasonable inference" of actual or constructive possession, the trial court would have been obliged to direct a verdict. The jury's responsibility was not to decide whether the state had produced a sufficient quantum of evidence to permit the elements of its case to be reasonably inferred. The jury's responsibility was to decide whether the state had proved the elements beyond a reasonable doubt.

The state argues that the jurors' instructions must be read as a whole, *State v. Guerra*, 161 Ariz. 289, 294, 778 P.2d 1185, 1190 (1989), and that the closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions. *State v. Rodriguez*, 114 Ariz. 331, 334, 560 P.2d 1238, 1241 (1977).

The state relies on the court's statement at the beginning of the instructions that the state must prove every element of the crime beyond a reasonable doubt. The problem is that this standard instruction was a general instruction, while the only instruction which specifically identified the element of possession or constructive possession grossly understated the burden of proof borne by the state. As for counsel's argument, defense counsel may have reminded the jury of their duty to find every element of the crime beyond a reasonable doubt, but we instruct juries to take the law from the trial court, not defense counsel; here, the trial court misstated the state's burden of proof.

▮ The state also argues that the defense waived this issue at trial by making only a general objection. We conclude that this issue cannot be waived. *State v. Schurz*, 176 Ariz. 46, 54, 859 P.2d 156, 164 (1993). The United States Supreme Court has recently issued an opinion concerning instructions that diminish the burden of proof. In *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993), the Court said:

> [T]he essential connection to a "beyond-a-reasonable-doubt" factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings. A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, "the wrong entity judge[s] the defendant guilty."

(Citing *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986).)

The Court then defined a "structural defect" as one not subject to a harmless error analysis, holding that absent such a basic protection, "a criminal trial cannot reliably serve its function." *Sullivan*, at 281–82, 113 S.Ct. at 2082–83 (citing *Rose*, at 577, 106 S.Ct. at 3105).

The same situation exists here. The jury instruction in question impermissibly lowers the state's burden of proof. We cannot place ourselves in the position of the jury when such a "structural defect" or fundamental error has occurred; accordingly, we must reverse Defendant's conviction.

## CONCLUSION

For the reasons given above, we reverse Orendain's convictions and remand this case to the trial court for further proceedings consistent with this opinion. Because of this disposition it is unnecessary for this court to decide the remaining issues raised by this appeal.

FIDEL, P.J., concurs.

GERBER, Judge, dissenting:

I respectfully dissent. I find no error in the instructions to the jury. The general reasonable doubt instruction was correct, adequate, and never diluted. Though it is always an issue, reasonable doubt is a general issue requiring no repetition. I do not read the specific instructions to define a lesser burden of proof. The result is unnecessary repetition that wastes the time of the court and insults the jury's intelligence. The general reasonable doubt instruction set forth the correct burden of proof; repeating it is no gain. I would affirm Orendain's conviction and sentence.